IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

_____

| | | |
|---|---|---|
| CHRISTOPHER WICKHAM, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 2:03-CV-595 TS |
| | ) | |
| v. | ) | District Judge Ted Stewart |
| | ) | |
| CLINT FRIEL, | ) | **MEMORANDUM DECISION** |
| | ) | |
| Respondent. | ) | Magistrate Judge David Nuffer |

_____

On March 28, 2005, after analyzing several grounds raised by Petitioner, Christopher Wickham, this Court denied him federal habeas corpus relief[1] as to his two Utah convictions for aggravated sexual assault, first-degree felonies, for which he is serving two consecutive ten-year-to-life terms.  Among other things, Petitioner had argued that his state criminal trial counsel ineffectively represented him by not seeking the victim's social services records.  Those records--derived from the Utah Department of Child and Family Services and Valley Mental Health--showed that the victim had previously lied about being sexually abused.  Petitioner argued that counsel could have used the records to impeach the victim's credibility at trial, which--because she provided the chief evidence against him--would have led the jury to find him not guilty.

_____

[1] *See* 28 U.S.C.S. § 2254 (2007).

This Court decided that this ineffective-assistance claim was barred by the applicable period of limitation.[2]  On February 15, 2007, the Tenth Circuit Court of Appeals reversed that decision and remanded the issue for a determination on the merits.  This Court then ordered and received a State response.

In the meantime, Petitioner, now represented by counsel, filed a "Supplemental Brief" and "Appendix," with several documents from the state and federal proceedings up to this time. The State countered with a motion to strike the brief and appendix, to which Petitioner rejoined with a motion for leave to file the brief and appendix.  Petitioner has also moved this Court to take judicial notice of the underlying state court proceedings in this case.  The Court denies the State's motion to strike the brief and appendix, grants Petitioner's motion for leave to file the brief and appendix, and grants Petitioner's motion that the Court take judicial notice of the underlying state court proceedings, limited to any related documents already submitted by the parties in this case.

ANALYSIS

In state post-conviction proceedings before he filed this federal habeas petition, Petitioner first asserted the issue of whether his trial counsel had ineffectively represented him by not seeking the victim's social services records.  After a bench

---

[2] *See id.* § 2244(d).

trial on that issue (and others irrelevant here), the state court
filed a memorandum decision, stating in pertinent part:

> Turning first to the issue of
> petitioner's assertion of ineffective
> assistance of counsel, the record in this
> matter does not support such a claim.  "In
> order to constitute ineffective assistance,
> counsel's performance must, first, fall below
> an objective standard of reasonableness and,
> second, prejudice the outcome of the
> proceedings."  Goddard, 871 P.2d at 545
> (citing Strickland v. Washington, 466 U.S.
> 668 (1984)).
> . . . .
> In sum, the Court is not persuaded that
> trial counsel was ineffective in his
> assistance of Wickham.  Accordingly, a new
> trial is not appropriate on this basis.
> . . . .
> After reviewing the record in this
> matter, it is clear this evidence [certain
> social services records of the victim which
> indicate she has previously lied about being
> sexually abused] was not known to trial
> counsel nor would it have been discovered
> using reasonable diligence.  Indeed, these
> records were provided to Pliego's counsel
> inadvertently by one or more of the agencies
> involved, and even then, they were only
> discovered at or about the time Pliego
> entered his plea--years after Wickham's March
> 21, 1997 sentencing.[3]

Pliego was Petitioner's co-defendant but was a fugitive at
the time of Petitioner's trial.  When he was later brought to
face his own two counts of aggravated sexual assault, he
unsuccessfully sought the victim's social services records from
the prosecution.  The Utah Supreme Court held that the

---

[3] *Wickham v. Galetka*, No. 990904227, slip op., at 2-5 (Utah 3d Dist. Ct.
July 31, 2000) (quoting *State v. Goddard*, 871 P.2d 540, 545 (Utah 1994)).

prosecution need not provide the records and that Pliego could subpoena the agencies for the records himself.[4]  Of course, as the court found above, he ended up getting the records in an inadvertent disclosure.

Pliego then accepted a plea bargain, in which his two first-degree felony counts were reduced to a single third-degree-felony conviction of unlawful sexual intercourse.  At Petitioner's state post-conviction trial, the prosecutor, who had handled both men's convictions, testified that she had offered Petitioner the very same plea bargain before he went to trial.  Unlike Pliego, though, Petitioner did not accept the offer.

A.  Standard of Review

Section 2254, under which this habeas petition was filed, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[5]

---

[4] *State v. Pliego*, 974 P.2d 279, 283 (Utah 1999).

[5] 28 U.S.C.S. § 2254(d) (2007).

Under § 2254(d)(1), then, this Court may grant habeas relief only when the state court has formed "a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably applied the governing legal principle to the facts of the petitioner's case."[6]  This deferential standard does not let a federal habeas court issue a writ merely because it determines on its own that the state decision erroneously applied clearly established federal law.[7]  "'Rather that application must also be unreasonable.'"[8]  Moreover, federal courts must presume state court factual findings are correct.[9]  It is Petitioner's burden to rebut that presumption with clear and convincing evidence.[10]

Finally, "[i]t is, of course, well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas."[11]  This Court must "give effect to state convictions to

---

[6] _Walker v. Gibson, 228 F.3d 1217, 1225 (10th Cir. 2000)_ (citing _Williams v. Taylor_, 529 U.S. 362, 412-13 (2000)).

[7] _See id._

[8] _Id._ (quoting _Williams, 529 U.S. at 411_).

[9] _Id._ (citing 28 U.S.C.S. § 2254(e)(1) (2007)).

[10] _See id._ (citing 28 U.S.C.S. § 2254(e)(1) (2007)).

[11] _Williams, 529 U.S. at 375_.

the extent possible under law."[12]  Still, "errors that undermine
confidence in the fundamental fairness of the state adjudication
certainly justify the issuance of the federal writ."[13]

     B.   Application of Standard of Review

     1.   Unreasonable determination of facts

Petitioner first challenges the state habeas court's
findings of fact.  The relevant factual findings of the state
trial court regarding Petitioner's state post-conviction-relief
petition are as follows:

> 5. Records generated by ARTEC
> [Adolescent Residential Treatment and
> Education Center] and Division of Child and
> Family Services relating to alleged victim
> Barbara Hake ("The Records") indicate that
> Barbara Hake has lied previously about being
> sexually abused;
> 6. Trial Counsel did not know that The
> Records existed nor could he have discovered
> them using reasonable diligence[.][14]
>
> [T]his evidence [certain social service
> records of the victim which indicate she has
> previously lied about being sexually abused]
> was not known to trial counsel nor would it
> have been discovered using reasonable
> diligence.  Indeed, these records were
> provided to Pliego's counsel inadvertently by
> one or more of the agencies involved, and
> even then, they were only discovered at or

---

[12]*Id.* at 386.

[13]*Id.* at 375.

[14]*Wickham v. Galetka*, No. 990904227, slip op. at 2 (Utah 3d Dist. Ct.
Aug. 14, 2000) (Findings of Fact, Conclusions of Law and Order).

> about the time Pliego entered his plea--years
> after Wickham's March 21, 1997 sentencing.[15]

These factual findings were not directly addressed, but were implicitly affirmed by the Utah Supreme Court.[16]

During Petitioner's state post-conviction-relief bench trial, the evidence presented about the issue of defense counsel's effectiveness consisted of the testimony of trial counsel, as well as the social services records themselves.

Petitioner's defense attorney testified that he knew the victim was a runaway from ARTEC, had a vague idea that ARTEC gave counseling to children with foster care and substance abuse problems, and did not try to get the ARTEC records.  He further testified that he knew DCFS had interviewed the victim and he was given transcripts of the victim's interviews with DCFS about this case, but he did not try to get other DCFS records involving the victim.  He went on to say that he did not know that the victim had previously alleged that she had been abused by someone else. Defense counsel also testified that he had sought discovery from the prosecution, which responded with some evidence.  He further stated on the witness stand that he knew the victim had been in counseling and admitted to being drunk on the night of the crime; had good memory and bad memory days; and was "crashing" wherever

---

[15]*Wickham v. Galetka*, No. 990904227, slip op. at 4-5 (Utah 3d Dist. Ct. July 31, 2000) (Memorandum Decision).

[16]*Wickham v. Galetka*, 61 P.3d 978 (Utah), *reh'g denied* (2002).

she could.  Finally, he specified that he did not try to get the victim's social services records because he "wrongly assumed . . . that they were privileged, that [he] wasn't entitled to them" and even if he could somehow get them, they would not be admissible at trial.  He thought this was a wrong assumption because Pliego's counsel had managed to get hold of the records.

The prosecutor testified she had not had the social services records and did not know that the victim had alleged prior abuse. The social services records showed a DCFS entry, numbered "5," which said the victim had disclosed sexual abuse before, then admitted to lying, and that she had a history of lying, and a Valley Mental Health entry, numbered "6," which said the victim had confessed to lying about sexual abuse by her brother.

First, the factual finding that the social services records indicated that the victim had "lied previously about being sexually abused" is directly supported by DCFS entry five and Valley Mental Health entry six.

Second, the factual finding that Petitioner's defense counsel "did not know that The Records [that the victim had previously lied about being sexually abused] existed nor could he have discovered them using reasonable diligence" is supported by defense counsel's testimony that he did not know that the victim had previously alleged that she had been abused by anyone else.

Meanwhile, the factual finding that defense counsel could not have discovered the records using reasonable diligence is supported by defense counsel's testimony that he had investigated the case before trial--requested and received discovery information from the prosecution (including DCFS interviews of the victim about this case) and arranged for witness interviews. He said he had not tried to get the victim's social services records for general review because he had "wrongly assumed" they would be privileged and inadmissible at trial.  He believed this was wrong because Pliego's counsel had gotten the records. (Of course, what he did not know when he assumed this was that Pliego's counsel got these records by inadvertent disclosure. This factual finding is supported by Petitioner's state post-conviction counsel's statement at the post-conviction hearing: "[W]hat in fact occurred is, the records were released by mistake to Pliego's attorney.").  Also, the prosecutor testified that she had not known of the victim's prior abuse claims and never had the social services records herself.

Obviously, the state habeas court believed defense counsel's and the prosecutor's testimony about not knowing about previous abuse allegations and the presence of those allegations in the social services records.  Upon personally observing those testifying and being uniquely positioned to assess their credibility and judgment--after all the same judge sat for

Petitioner's criminal trial and state post-conviction hearing[17]--
the state habeas court determined defense counsel did not know
about and could not have discovered, using reasonable diligence,
the records of the victim's prior false abuse allegations.  This
Court must presume these factual findings are correct.  And,
Petitioner here has not presented any arguments that carry his
burden of presenting "clear and convincing evidence" to rebut the
presumption.  The Court therefore cannot say that the state
habeas court's findings of fact are unreasonable based on the
evidence introduced.

2.  Application of Supreme Court precedent

The Court now reviews the Supreme Court precedent used by
the state courts and how it was applied.  First, Petitioner has
not identified any Supreme Court "case with a materially
indistinguishable set of facts" to this one.[18]  Nor has he
suggested that the state court made a decision opposite to a
Supreme Court decision on a question of law.  And, this Court has
not found any such precedent in its own research.

Meanwhile, the state court here clearly selected the correct
governing legal principle with which to analyze the ineffective-
assistance-of-counsel issue.  It is the familiar two-pronged

---

[17]*See* *Massaro v. United States*, 538 U.S. 500, 506 (2003) ("The judge
having observed the earlier trial, should have an advantageous perspective for
determining the effectiveness of counsel's conduct and whether any
deficiencies were prejudicial.").

[18]*Walker*, 228 F.3d at 1225.

10

standard of *Strickland v. Washington*[19]:  Petitioner was first required to show that his counsel performed deficiently--i.e., he had to show that his counsel's errors were so serious that counsel was not operating as the counsel pledged Petitioner by the Sixth Amendment.[20]  This is measured by a standard of "reasonableness under prevailing professional norms."[21] Secondly, Petitioner needed to show that his defense was prejudiced by his counsel's deficient performance.[22]  This meant showing that the errors were so grave as to rob him of a fair trial, with a reliable, just result.[23]

The remaining question then is whether the state court "unreasonably applied th[is] governing legal principle to the facts of the petitioner's case."[24]  To challenge a decision as unreasonably applying clearly established federal law, "a petitioner must show the state court's application of federal law was 'objectively unreasonable,' which means 'most reasonable jurists exercising their independent judgment would conclude the

---

[19] 466 U.S. 668 (1984).

[20] *Id.* at 687.

[21] *Id.* at 688.

[22] *Id.* at 687.

[23] *Id.*

[24] *Walker, 228 F.3d at 1225*.

state court misapplied Supreme Court law.'"[25]  Further, it is

insufficient to show "'that the decision is clearly wrong or that

the reviewing court would have reached a contrary decision. . . .

[T]he state court decision must be at such tension with governing

U.S. Supreme Court precedents, or so inadequately supported by

the record, or so arbitrary as to be unreasonable.'"[26]

In analyzing this issue, this Court must keep in mind the

Supreme Court's directive from *Strickland*:

> Judicial scrutiny of counsel's performance
> must be highly deferential.  It is all too
> tempting for a defendant to second-guess
> counsel's assistance after conviction . . .,
> and it is all too easy for a court, examining
> counsel's defense after it has proved
> unsuccessful, to conclude that a particular
> act or omission of counsel was unreasonable.
> A fair assessment of attorney performance
> requires that every effort be made to
> eliminate the distorting effects of
> hindsight, to reconstruct the circumstances
> of counsel's challenged conduct, and to
> evaluate the conduct from counsel's
> perspective at the time.  Because of the
> difficulties inherent in making the
> evaluation, a court must indulge a strong
> presumption that counsel's conduct falls
> within the wide range of reasonable
> professional assistance . . . .[27]

---

[25] *Smith v. Dinwiddie*, No. 06-5116, 2007 WL 4328797, at *10 (10th Cir. Dec. 12, 2007) (quoting *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 1819 (2007)).

[26] *Id.* (quoting *Maynard*, 468 F.3d at 671) (internal quotation marks omitted).

[27] *Strickland*, 466 U.S. at 689 (citation omitted).

Thus, "a petitioner raising an ineffective assistance of counsel claim carries a 'heavy burden'" to show otherwise[28]--"'that *no* competent counsel would have taken the action that his counsel did take.'"[29]  And, this is heaped atop the already heavy burden of the habeas standard of review.  Indeed, Petitioner faces a formidable task in trying to convince this Court of his counsel's ineffective assistance.

### a.  Deficient Performance?

The Court begins with *Strickland*'s first prong.  The applicable facts are as follows:  Petitioner's counsel, while knowing the victim had been involved with social service providers ARTEC and DCFS, did not request the victim's records from these agencies.  At the time of trial, counsel could not have known using reasonable diligence that these records showed that the victim had made prior false statements that she had been abused.  The state habeas court specifically decided (and the Utah Supreme Court implicitly affirmed) that counsel's failure to request the victim's social services records--considering he had no way of knowing they showed the victim had previously lied about being abused by someone else--was reasonable under

---

[28] *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (citation omitted).

[29] *Id.* at 1049 (quoting *Chandler v. United States*, 218 F.3d 1305, 1315-16 (11th Cir. 2000) (en banc)) (emphasis added).

prevailing standards of the profession.  The question is:  Was that a reasonable decision?

Here, the duty at issue is counsel's duty to investigate. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[30]  Counsel has an obligation to do "reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[31]  The responsibility to investigate "does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste."[32]  And, "[h]indsight does not weigh into the evaluation of the reasonableness or adequacy of [counsel's] actions."[33]  Also, when, as here, counsel stated that he "wrongly assumed" the records were privileged and inadmissible, "because the standard is an objective one, trial counsel's admission that his performance was deficient 'matters little.'"[34]

---

[30] *Strickland*, 466 U.S. at 691.

[31] *Id.*

[32] *Rompilla v. Beard*, 125 S. Ct. 2456, 2463 (2005).

[33] *United States v. Blackwell*, 127 F.3d 947, 955 (10th Cir. 1997).

[34] *Jennings v. McDonough*, 490 F.3d 1230, 1243 (11th Cir. 2007) (citation omitted).

Under all the circumstances, this Court cannot say that the state habeas court unreasonably applied *Strickland* to the facts of this case.  It seems fair to say that reasonable counsel may very well not have sought the records--not knowing of the prior false abuse allegation(s)--while recognizing legal privileges existed in general as to client/social worker records.  Although Petitioner's trial counsel knew in general that the social services records existed, he would not have been entitled, under Utah law at the time, to conduct a "'fishing expedition'" through the victim's records in vague hopes to unearth something specifically damaging to the victim's credibility.[35]  Further, on appeal in the *Pliego* case--regarding these very same records--the Utah Supreme Court noted that, while the prosecutor had no duty to disclose or produce the victim's social services records, Pliego could request them directly from the social service agencies, *although some of the records may be privileged medical records and that privilege could apply to keep Pliego from obtaining them*.[36]

The privileges, privacy, and admissibility rules counsel may have reasonably determined should curb his investigative efforts were Utah Rule of Evidence 506, which says information communicated in confidence between a therapist and client for

---

[35]*See State v. Petty*, 412 P.2d 914, 918 (Utah 1966); *Downtown Athletic Club v. Horman*, 740 P.2d 275, 279 (Utah Ct. App. 1987).

[36]*See State v. Pliego*, 974 P.2d 279, 282-83 (Utah 1999).

diagnosis or treatment purposes is generally privileged; Utah Code Ann. § 62A-4a-412(1),[37] which says that DCFS records are confidential unless a court requires them as necessary to determine an issue before it; Utah Code Ann. § 63-2-302(1)(b),[38] which says that government records about medical history, diagnosis, treatment, and the like, are private; Utah Code of Judicial Administration Rule 4-202.03, which authorizes disclosure of juvenile court legal records and social and probation records only to specified individuals; Utah Code Ann. §§ 63-2-201(5) and 63-2-202(9),[39] which say agencies have no discretion to disclose certain privileged or private records absent a judicial weighing of interests; and Utah Rule of Evidence 412, which says that evidence of a victim's sexual history is generally inadmissible.

Also, the *Cardall* case[40] says that "if a defendant can show with reasonable certainty that exculpatory evidence exists that would be favorable to his defense, [he has] the right to have the otherwise confidential records reviewed by the trial court to determine if they contain material evidence."[41]  But, before

---

[37] Utah Code Ann. § 62A-4a-412(1) (2007).

[38] *Id.* § 63-2-302(1)(b).

[39] *Id.* §§ 63-2-201(5), 6 3-2-202(9).

[40] *State v. Cardall*, 982 P.2d 79 (Utah 1999).

[41] *Id.* at 85 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987)).

being granted *in camera* review, it is not enough to show records exist; the defendant "must show, with reasonable certainty, that the sought-after records actually contain 'exculpatory evidence . . . which would be favorable to his defense'"--"a stringent test, necessarily requiring some type of extrinsic indication that the evidence within the record exists and will, in fact, be exculpatory."[42]  It is not enough to merely speculate.[43] Petitioner here could not have met this standard based on the limited information he and his counsel had about the victim's records before trial.

Until Pliego got hold of the records through inadvertent disclosure--long after Petitioner's criminal proceedings had ended--neither Petitioner nor his counsel could have known about the victim's prior falsehoods about abuse.  Counsel can not be held ineffective for not obtaining records of the victim's falsehoods, of which he had no knowledge; the records came to light too late for counsel to use them to Petitioner's advantage.[44]  Just because Petitioner's current counsel discovered the contents of the records does not mean Petitioner's

---

[42]*State v. Blake*, 63 P.3d 56, 61 (Utah 2002).

[43]*State ex rel. T.W. v. State*, 139 P.3d 312, 316 (Utah Ct. App. 2006).

[44]*See Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1538 (10th Cir. 1994) (holding "district court correctly concluded counsel could not be held ineffective for [not] objecting to something of which he had no knowledge and that petitioner's claim of perjury and conspiracy came after the fact" in case in which counsel did not object to "false" testimony of witness that was contrary to sworn statement of other witness, not presented in court and not known to counsel).

trial counsel's failure to uncover them was unreasonable.[45]  The
circumstances were vastly different on habeas review than they
were at trial--about two years before.  "[T]he blessing of
perfect hindsight frequently discloses avenues which should have
been explored."[46]  However, the law does not impose the
impossible standard of perfect hindsight on counsel.

In sum, counsel did not know the records contained prior
false sexual abuse allegations by the victim.  His decision not
to subpoena the records for a general look-through was supported
by his reasonable belief that the records contained privileged or
inadmissible material.  The Court therefore concludes that the
state habeas court's application of *Strickland*'s deficient-
performance prong to the facts of this case was not unreasonable.

## B. Prejudice

Although it is enough that the Court has decided against
Petitioner on the deficient-performance prong, the Court also
evaluates the prejudice prong, as an alternative basis to deny
Petitioner's habeas petition.  "An error by counsel, even if
professionally unreasonable, does not warrant setting aside the
judgment of a criminal proceeding if the error had no effect on

---

[45]*See United States v. Soto Hernandez, 849 F.2d 1325, 1330 (10th Cir.
1988)* (concluding no ineffective assistance when counsel did not interview and
call certain witnesses based on his understanding from defendant that those
witnesses would have had no personal knowledge to share, even though
defendant's new counsel later discovered these witnesses may have been
helpful).

[46]*Myrick v. Maschner, 799 F.2d 642, 647 (10th Cir. 1986)*.

the judgment."[47]   Rather, "[t]he defendant must show that there
is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome."[48]  Regarding
a duty-to-investigate ineffective-assistance-of-counsel claim,
Petitioner "must specifically show what beneficial evidence an
'adequate' investigation would have produced.  Simply speculating
that investigation might have resulted in something useful will
not suffice."[49]   The question, then, is, did the state habeas
court unreasonably apply the second prong of *Strickland* in
determining trial counsel's performance was not ineffective?

     Reviewing the record, the Court determines the state habeas
court did not unreasonably apply *Strickland*'s rule.  First, as
explained above, because counsel did not know at the time of
trial that the records contained prior false abuse allegations,
he could not have shown that he could overcome the existing
evidentiary privileges blocking his access.  Thus, even if he had
tried to get the records, the privileges would have kept him from
them.  Apparently, no one involved in Petitioner's criminal
prosecution realized that the records could significantly aid his

---

[47]*Strickland*, 466 U.S. at 691.

[48]*Id.* at 694.

[49]*United States v. Manriquez-Rodriguez*, No. 98-2203, 1999 WL 345505, at
*5 (10th Cir. June 1, 1999) (unpublished) (citation omitted).

defense.  It would have been purely speculative at that time to think that the records would be at all helpful.

Further, in terms of her credibility, the picture of the victim painted at trial was fairly grim anyway.  She admitted on the stand that she was drunk during the crime, had good memory and bad memory days, was "crashing" wherever she could, and had been an inpatient at a mental health facility before she ran away.  Despite all these credibility-damaging facts, the jury believed her testimony against Petitioner.  Considering this, it is not necessarily true that the jury would have rendered a different verdict had it known the records' contents.

Finally, although the records of the victim's past false abuse allegations were available and known during the criminal proceedings against Petitioner's co-defendant, Pliego, he received the same plea bargain offer Petitioner received.  The offer involved reducing the two first-degree felony counts of aggravated sexual assault to a single third-degree-felony conviction of unlawful sexual intercourse.  The difference is that Petitioner rejected the offer and went to trial (only to be convicted on both first-degree felony counts), while Pliego accepted the offer (ending up with only one third-degree felony on his record).  In terms of bargaining with the prosecution, then, it appears Petitioner was in no better position *without* the records than his co-defendant *with* the records.  This further

20

shows the lack of prejudice to Petitioner stemming from his counsel's failure to obtain the records before trial.

CONCLUSION

Petitioner has raised no valid grounds for federal habeas relief.  IT IS THEREFORE ORDERED that Petitioner's habeas corpus petition under § 2254 is DENIED.

IT IS ALSO ORDERED that Petitioner's motions for judicial notice are GRANTED.  (*See* File Entry #s 41 & 49.)  These motions are granted limited to any related documents from the underlying state court proceedings that have already been submitted to this Court by the parties here.

IT IS FURTHER ORDERED that the State's motion to strike Petitioner's "Supplemental Brief," along with an "Appendix," is DENIED.  (*See* File Entry # 45.)  And, Petitioner's motion for leave to file his "Supplemental Brief" and "Appendix" is GRANTED. (*See* File Entry # 47.)

IT IS FINALLY ORDERED that the State's motion to file the "Appendix" (File Entry # 44) under seal is granted.  (*See* File Entry # 45.)

DATED this 10th day of January, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge

21